UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

                                                                                          Case No. 809-75719-reg

LYDIA T. RABENER,

                                                                                          Chapter 13

                            Debtor.
----------------------------------------------------------------x

## MEMORANDUM DECISION

Before the Court is the Chapter 13 Trustee's objection to confirmation of the Debtor's Chapter 13 plan. The Trustee argues that the plan does not propose to pay all of the Debtor's "projected disposable income" to be received during the life of the plan towards repayment of unsecured creditors. *See* 11 U.S.C. §1325(b)(1). Specifically, the Trustee objects to the Debtor's deductions on Lines 28 and 29 of the "means test" for "transportation ownership/lease expenses" for two vehicles for which she has no loan or lease obligation. The Debtor argues that the "transportation ownership/lease expenses" at issue are standardized deductions which she is allowed as a matter of law to deduct regardless of whether she actually has such an expense. *See* 11 U.S.C. §707(b)(2)(A)(ii)(I). For the reasons that follow the Court holds that the Debtor may not deduct the standardized transportation ownership/lease expense of $489 per vehicle for two vehicles she owns but for which she has no loan or lease payment obligation.

*Facts*

The Debtor, Lydia T. Rabener (the "Debtor"), filed a Chapter 13 petition on July 31, 2009. On Schedule B of her petition, the Debtor stated that she owned two motor vehicles: a 2000 Chevrolet 1500 Express valued at $4,385, and a 2003 Cadillac DeVille valued at $8,025. The schedules also reflect that these vehicles are owned by the Debtor free of any loan or lease

obligation (Schedule D). As a result the Debtor does not have any monthly car loan or lease expense (Schedule J). The Debtor's Schedules I and J filed with the petition show that she has $8,959.53 in net monthly income, and $8,537.77 in average monthly expenses which leaves her with $421.76 in actual monthly disposable income. The Debtor's proposed amended chapter 13 plan, dated September 29, 2009, proposes to pay $342 per month for sixty months which would result in a 7% distribution to unsecured creditors.

On November 24, 2009, the Debtor filed an amended Official Form B22C, "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income" ("Form B22C" also known as the Chapter 13 "means test"). The Debtor's annualized income reported on Form B22C is $104,768 which makes her an "above median income" debtor and requires her to take Internal Revenue Service standardized expense deductions for certain expenses on Form B22C. *See* 11 U.S.C. §1325(b)(3). One such standardized expense is found on Lines 28 and 29 of the means test, "Local Standards: transportation ownership/ lease expense" and is at the center of this dispute. Despite the fact that the Debtor does not have a monthly car payment for either of her vehicles, she took the standardized deduction of $489 for each of them. Including the Debtor's $978 standardized expense deduction for the two vehicles, the Debtor's monthly disposable income on Form B22C is $971.42.[1] The Debtor has also

---

[1]

The Debtor's first means test, dated July 31, 2009, showed that she had "monthly disposable income" under §1325(b)(2) equal to negative <$1,588.75> per month. The second means test, dated September 29, 2009, showed negative <$675.58> monthly disposable income. The third means test, dated October 16, 2009, showed negative <$128.58> monthly disposable income. The fourth and most recent means test, dated November 20, 2009, shows $971.42 in monthly disposable income. The Debtor took the $978 deduction ($489 times 2 vehicles) for the transportation ownership/lease expense on each iteration of the means test. From the Court's reading of the means tests, the main reason for the successive increases in the Debtor's monthly disposable income appears to be the inclusion of $1,100 in rental income, the deletion of a $222 expense for life insurance premium (Line 32), and a $325 reduction of a health care expense on Line 36. The Court first questions why it was necessary to file so many versions of the means

claimed an "additional expense claim" of $900 per month on Line 60 of Form B22C for her son's medical expenses. If allowed, this would presumably reduce her monthly disposable income to $71.42.

On December 1, 2009, the Chapter 13 Trustee objected to the confirmation of the Debtor's plan arguing that the Debtor improperly took the transportation ownership/lease expense deductions and therefore has not pledged all of her "projected disposable income" to her Chapter 13 plan pursuant to 11 U.S.C. §1325(b)(1)(B). The Trustee's first argument is that Section 707(b)(2)(A)(ii)(I) which is incorporated into Section 1325 by reference, allows a debtor to deduct from income the "applicable monthly expense amounts specified under the [IRS] National Standards and Local Standards." The word "applicable," the Trustee posits, modifies the phrase "monthly expense amounts" and therefore such an expense must exist before it is capable of being applied to a debtor. *See Ransom v. MBNA America Bank, N.A. (In re Ransom)*, 577 F.3d 1026, 1029 (9th Cir. 2009); *Grossman v. Sawdy*, 384 B.R. 199, 203-04 (E.D. Wis. 2008). Therefore, a debtor who has no actual monthly car payments cannot take that expense on Lines 28/29.

Next, the Trustee argues that a reading of the statute which would permit a debtor to deduct a "fictional" expense from income would be inconsistent with the stated goals of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), that is, "to ensure that debtors repay creditors the maximum they can afford." *In re Wieland v. Thomas*, 382 B.R. 793, 798 (D. Kan. 2008) (quoting legislative history). The Trustee also cites to this Court's

---

test. More importantly, however, the Court will note that regardless of which version you look at the means test's bottom line numbers bear little relation to the Debtor's actual income and expenses on Schedules I and J.

decisions in *In re Almonte*, 397 B.R. 659 (Bankr. E.D.N.Y. 2008), *In re Rahman,* 400 B.R. 362 (Bankr. E.D.N.Y. 2008), and *In re Mendelson*, 412 B.R. 75 (Bankr. E.D.N.Y. 2009), which taken together support the position that absent an unambiguous statutory mandate only actual income and actual expenses that the Debtor will have during the life of the Chapter 13 plan should be taken into consideration on the means test.

Finally, the Trustee argues that Form B22C itself supports his position because Line 27 specifically states that a debtor is entitled to a "vehicle operation/public transportation expense . . . *regardless of whether* [the debtor] pay[s] the expenses of operating a vehicle and *regardless of whether* you use public transportation." Official Form B22C, Line 27 (emphasis added). Line 28's "transportation ownership/lease expense" deduction does not contain similar language but rather simply directs a debtor to "check the number of vehicles for which you claim an ownership lease expense." Including the directive that a debtor is entitled to the Line 27 expense deduction regardless of whether they actually have the expense implies that the exclusion of this language from Line 28 means that the debtor must actually have the expense to take that deduction. In addition, the Trustee argues, neither the Internal Revenue Manual nor the IRS Collection Financial Standards allow a taxpayer to deduct expenses for a transportation ownership or lease expense if the debtor does not actually incur such an expense. *See Ransom*, 577 F.3d at 1030.

The Office of the United States Trustee ("UST") filed a brief in support of the Trustee's objection to confirmation. The UST cites to the Fifth, Seventh, Eighth and Tenth Circuit Courts of Appeals which have all held that for purposes of determining a debtor's "projected disposable income" under Section 1325, both income and expenses should be viewed prospectively and should to the extent possible reflect a debtor's actual anticipated income and expenses for the life

of the Chapter 13 plan. *See McCarty v. Lasowski (In re Lasowski)*, 575 F.3d 815, 819-20 (8th Cir. 2009); *In re Turner*, 574 F.3d 349, 355-56 (7th Cir. 2009); *Nowlin v. Peake (In re Nowlin)*, 576 F.3d 258, 263 (5th Cir. 2009); *Hamilton v. Lanning (In re Lanning)*, 545 F.3d 1269, 1278-82 (10th Cir. 2008), *cert. granted*, 130 S.Ct. 487 (2009). This forward-looking approach, is supported by, among other arguments, the statute's use of the word "projected" and the reference to income "to be received" during the plan period. The UST distinguishes the Ninth Circuit's decision in *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868 (9th Cir. 2008), which determined that a debtor's "projected disposable income" is a static calculation made on the date of the petition based upon historical income figures.

The UST also argues that in Chapter 7 cases, Section 707(b)(2)(A)'s means test is merely a "stage-one" "screening mechanism" for dismissal and even if a debtor "passes" the means test under Section 707(b)(2)(A), the case still is subject to dismissal under Section 707(b)(3)(B) if the "debtor's financial situation demonstrates abuse" under the totality of the circumstances. *See* 11 U.S.C. §707(b)(3)(B). *See also In re Perelman*, No. 108-45953, 2009 WL 3490758, at *3 (Bankr. E.D.N.Y. Oct. 30, 2009) (allowing debtor to deduct expense payment for vehicle to be surrendered, but finding that the totality of the circumstances demonstrated an abuse). If the means test is not the final determination of dismissal in a Chapter 7, therefore, it should not be used as the final arbiter in a Chapter 13. Indeed, Section 1325(b)(2) provides its own backdrop for the Chapter 7 means test when it defines "disposable income" as current monthly income less *"amounts reasonably necessary to be expended . . .* for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. §1325(b)(2)(A) (emphasis added). Section 707(b)(2)(A)(ii)(I), the UST argues, must be read in light of the purpose for which is it is being used, *i.e.*, to determine projected disposable income under Section 1325(b)(1)(B).

The Debtor argues that the clear language of Section 707(b)(2)(A)(ii)(I) allows her to deduct the transportation ownership/lease expense despite the fact that she owns the two vehicles free and clear of liens or lease payments. In support of her argument, the Debtor relies on the statute's use of the word "applicable" (relating to standardized deductions), as opposed to the use of the word "actual" (relating to "Other Necessary Expenses"). She also argues that the statute mandates a blind use of the standardized deductions because it says that "[t]he debtor's monthly expenses *shall be* the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards. . ." 11 U.S.C. §707(b)(2)(A)(ii)(I) (emphasis added). Finally, the Debtor distinguishes this Court's decisions in *Rahman* and *Almonte* on the facts. Absent from the Debtor's argument is a discussion of Section 1325(b)(2).

*Discussion*

Section 1325 of the Bankruptcy Code provides that if the trustee or the holder of an allowed unsecured claim objects to confirmation, the Court may not approve the plan unless,

> . . . as of the effective date of the plan--
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's *projected disposable income to be received* in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B) (emphasis added).

"Projected disposable income" is not a defined term under the Bankruptcy Code. However, prior to the October 2005 enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), a debtor's projected disposable income figures were derived from

actual income and expenses on Schedules I and J. Pursuant to BAPCPA, "disposable income" is now defined as,

> *. .. current monthly income* received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less *amounts reasonably necessary to be expended--*
>
> (A)(i) *for the maintenance or support of the debtor or a dependent of the debtor*, or for a domestic support obligation, that first becomes payable after the date the petition is filed;
> . . .

11 U.S.C. § 1325(b)(2) (emphasis added).

The Code provides that for above-median income debtors, as we have in this case, the "amounts reasonably necessary to be expended" referred to in Section 1325(b)(2), shall be determined in accordance with Section 707(b)(2)(A) and (B). *See* 11 U.S.C. §1325(b)(3). Relevant to the facts of the instant case, Section 707(b)(2)(A)(ii)(I) provides that:

> The debtor's monthly expenses shall be the debtor's *applicable monthly expense amounts specified under the National Standards and Local Standards*, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, . . .

11 U.S.C. §707(b)(2)(A)(ii)(I) (emphasis added).

The National and Local Standard expense deductions mentioned in Section 707(b)(2)(A)(ii)(I) are reflected in Lines 24A through 29 of Form B22C. Specifically, the local standard expense deduction at issue in this case is for the "transportation ownership/lease expense" which is reflected in Lines 28 and 29 of Form B22C. In this jurisdiction, the standard Internal Revenue Service ("IRS") deduction for transportation ownership/lease expenses for a single vehicle is $489. A debtor may only deduct transportation ownership expenses or lease expenses for a

maximum of two vehicles.

Courts across the country are divided on the issue of whether a debtor should be permitted to take the transportation ownership/lease expense when the debtor does not have any monthly car payment obligation. There are several published decisions which hold that a Chapter 13 debtor may deduct the transportation ownership/lease expense for a vehicle despite the fact that the debtor does not actually have any such monthly ownership expense or lease expense.[2] *See, e.g., Babin v. Washburn (In re Washburn)*, 579 F.3d 934, 942 (8th Cir. 2009) (adopting plain meaning approach and permitting debtor to take standardized expense deduction for car which debtor owned outright ). *Compare Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652 (8th Cir. 2008) (finding that while debtor's historically-based "disposable income" is starting point for determining "projected disposable income," the final calculation can take into consideration changes that have occurred in debtor's financial circumstances, as well as debtor's actual income and expenses as reported on bankruptcy schedules); *Lasowski*, 575 F.3d at 819-20 (same); *In re Pearson*, 390 B.R. 706, 713-14 (B.A.P. 10th Cir. 2008) (concluding that "applicable" standardized expenses referred to in section 707(b)(2)(A)(ii)(I) do not have to be "actual" expenses because Congress specifically refers to "actual" expenses later in the statute and "applicable" and "actual" cannot therefore be given the same meaning); *Swimelar v. Lamendola*, No. 08-cv-1210, 2009 WL 1748780, at *1 (N.D.N.Y. June 19, 2009) (same); *Hildebrand, III v. Kimbro (In re Kimbro)*, 389 B.R. 518, 532 (B.A.P. 6th Cir. 2008); *In re Pearl*, 394 B.R. 309, 314-15 (Bankr. N.D.N.Y. 2008); *In re Roberts*, No. 07-210247, 2008 WL 542503,

---

[2] The Court has limited its discussion of the caselaw on this topic to cases under Chapter 13. It is this Court's belief that in Chapter 13 cases, Section 707(b) must be read and interpreted together with Section 1325. For that reason, decisions interpreting Section 707(b) alone are distinguishable.

at *4 (Bankr. D. Conn. Feb. 28, 2008). These courts reason that the plain meaning of the statute belies a finding that the standardized "applicable monthly expense amounts" referred to in Section 707(b)(2)(A)(ii)(I) should be interpreted to include only actual expenses. Section 707(b)(2)(A)(ii)(I) refers to both "applicable" standardized expense amounts and to "actual" expense amounts for "other necessary expenses." These courts rely in part on the rule of statutory construction which says that meaning must be given to each word of a statute and hold that if Congress intended to require that the standardized expense deductions be actual expenses, it could have said so. These cases also cite to the mandatory nature of Section 707(b)(2)(A)(ii)(I) which states that the debtor's means test deductions "shall be" the amounts specified in the IRS standards. *Kimbro*, 389 B.R. at 522-23. Some courts which have permitted a debtor to take standardized deductions regardless of whether they actually incur such expenses, also have relied on an underlying policy argument that a primary goal of the 2005 amendments to the Bankruptcy Code was to "create [a] bright-line means test to eliminate judicial discretion." *Kimbro*, 389 B.R. at 527-29 (". . . Congress determined that these policies were more important than accuracy.").

The Ninth Circuit Court of Appeals recently held in *Ransom v. MBNA America Bank, N.A. (In re Ransom)*, 577 F.3d 1026, 1030-32 (9th Cir. 2009), that a Chapter 13 debtor is *not* entitled to deduct a vehicle ownership expense for a vehicle that is owned free and clear of liens. In *Ransom*, the court interpreted the statute's use of the word "applicable" in Section 707(b)(2)(A)(ii)(I) to mean only those expenses that the debtor actually pays – with the IRS standardized deduction amount acting as a cap on those expenses. "Under this reading, 'actual' and 'applicable' do mean two different things - one is a limitless deduction within the specified categories of Other Necessary Expenses, and the other is a deduction limited to the amount and

type specified by the IRS." *Ransom*, 577 F.3d at 1030 (quoting *In re Slusher*, 359 B.R. 290, 308-09 (Bankr. D. Nev. 2007)). The Ninth Circuit found that the plain reading of the statute does not allow a debtor to deduct an "ownership cost" because it cannot be an "expense" if it does not exist. On policy grounds, the court found that it would be "ironic . . . [t]o diminish payments to unsecured creditors in this context on the basis of a fictitious expense not incurred by a debtor." *Id.*

> To interpret the statute otherwise is counterintuitive to one of the main objectives of BAPCPA: to ensure that debtors repay as much of their debt as reasonably possible. When viewed within the larger context of BAPCPA, we believe the statute can only be interpreted to 'apply' expense standards in cases where debtors in fact pay such expenses.

*Id.* at 1031 (citations omitted).

The *Ransom* court discussed, but did not rely on, what is referred to as the "IRM approach." This approach finds support in the interpretation of the word "applicable" as it is implemented by the Internal Revenue Service through the Internal Revenue Manual and the IRS Collection Financial Standards. Both of these manuals require a taxpayer to have a loan or lease payment in order to qualify for the "ownership cost" deduction. Courts applying the IRM approach reason that because Congress incorporated the IRS standardized deductions into the means test, it is appropriate to look at how the IRS defines and applies these expenses in tax cases. *See Ransom*, 577 F.3d at 1029.

*Analysis*

As a matter of statutory interpretation, this Court believes that this issue cannot be resolved by reference to Section 707(b)(2)(A)(ii) in isolation. In Chapter 13 cases, the propriety

of means test expense deductions arises within the context of Section 1325(b) which states that "[i]f the trustee . . . objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan . . . the plan provides that all of the debtor's *projected disposable income to be received* in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. §1325(b)(1)(B) (emphasis added). The statute goes on to state that "disposable income" is "current monthly income" (a defined term) less "amounts reasonably necessary *to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor . . .*" 11 U.S.C. §1325(b)(2) (emphasis added). As this Court held in prior published "means test" decisions, the term "projected disposable income" used in Section 1325(b) is a forward-looking concept that should not include "fictional" income or "fictional" expenses that will not be received or expended during the plan period.[3] *See In re Almonte*, 397 B.R. 659 (Bankr. E.D.N.Y. 2008); *In re Rahman,* 400 B.R. 362 (Bankr. E.D.N.Y. 2008); and *In re Mendelson*, 412 B.R. 75 (Bankr. E.D.N.Y. 2009).[4]

---

[3] In *Almonte*, this Court examined the income side of the Chapter 13 means test and held that "[i]f a debtor's 'disposable income' on Form B22C differs from the debtor's actual monthly disposable income reported on Schedules I and J, the Court may analyze the debtor's actual projected income over the life of the plan in order to avoid a result which the Court believes is inconsistent with two fundamental bankruptcy principles; that is, giving the honest but unfortunate debtor a 'fresh start,' and requiring a chapter 13 debtor to repay creditors what he can afford from his post-petition earnings." *Almonte*, 397 B.R. at 667. In *Almonte*, the Court adopted the forward-looking approach used by the Tenth Circuit in *In re Lanning*, 545 F.3d 1269 (10th Cir. 2008), *cert. granted*, 130 S.Ct. (2009). The Supreme Court recently granted certiorari in *Lanning* and will soon decide whether the forward-looking, flexible approach to "current monthly income" is the correct interpretation of the statute.

[4] This Court's *Rahman* and *Mendelson* decisions involved Chapter 13 means test expense deductions. In *Rahman*, the Court held that a debtor could not, pursuant to 11 U.S.C. §1325(b) and 707(b)(2)(A)(iii), take an expense deduction for secured debt repayment obligations with respect to collateral that the debtor intended to surrender pursuant to his confirmed plan. To allow such an expense deduction would allow a debtor to deduct fictional expenses from monthly income and thus withhold funds from unsecured creditors. Similarly, in *Mendelson*, the Court found that the debtor could not take a secured debt repayment expense for a motor vehicle driven

When read within the context of Section 1325(b), this Court finds that the most persuasive reading of the phrase "applicable monthly expense amounts. . ." in Section 707(b)(2)(A)(ii), is that only expense amounts that are capable of being applied to a particular debtor may be deducted from income. "[T]he deduction is to be used if and only if the debtor actually has the monthly expense of an actual car payment. Stated another way, a debtor may only claim the deduction listed if they are applicable to that debtor." *Grossman*, 384 B.R. at 204.

This reading of the statute is also supported by the wording of Lines 28 and 29 on Form B22C. The form instructs a debtor to "[c]heck the number of vehicles for which you claim an ownership/lease expense." Under this Court's reading of those instructions, a debtor should only check the box or boxes in that section if they can "claim" a vehicle ownership expense or a vehicle lease expense. A debtor who does not have a vehicle ownership expense or a vehicle lease expense does not qualify for and cannot "claim" any deduction for Lines 28 or 29. Thus, a debtor who does not have an actual expense under Lines 28 or 29 never gets to the second part of those sections which instruct the debtor to insert in subsection (a) the "'Ownership Costs' for 'One Car' from the IRS Local Standards: Transportation."

This reading of the statute and form is also supported by reason. If an above-median income debtor has an actual monthly car loan or lease payment, then that debtor may deduct the amounts specified under the National Standards and Local Standards. If the above-median income debtor's actual expense exceeds the standardized deduction, the debtor is limited to the standardized amount. When one considers that Congress determined to apply standardized

---

exclusively by her ex-husband and which the debtor stated she had no intention of paying in the future. This Court found that it "would be stretching the bounds of reason to find that repayment of a loan on a vehicle driven exclusively by the Debtor's ex-husband is "reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor" under Section 1325(b)(2).

deductions, as opposed to "actual" deductions, to *above-median income* debtors it stands to reason that the standardized deductions were intended to act as a cap on certain expenses not as an opportunity to take an expense deduction where one does not actually exist. If a *below-median income* debtor is limited by his actual car loan or lease payment amounts, why should a debtor with *higher income* be permitted to take an expense amount where one does not exist? Absent clear binding authority in this Circuit, this Court will not adopt a reading of the statute which does not make any sense.

In *Rahman* and *Mendelson* the Court expressed an overall policy that, absent binding authority in this Circuit, it would not "adopt a reading of the statute that permits a debtor to withhold disposable income from repayment to unsecured creditors." *Rahman*, 400 B.R. at 370. Although *Rahman* and *Mendelson* involved interpretation of Section 707(b)(2)(A)(iii) (secured debt repayment deductions), as opposed to Section 707(b)(2)(A)(ii) (standardized expense deductions) which is at issue here, the Court finds that its reasoning as stated in the earlier cases is equally applicable to the instant case. The Court believes in light of the overall purpose of the Bankruptcy Code, which is to provide an honest debtor with a fresh start consistent with the statutory requirements to maximize distributions to unsecured creditors, the more persuasive reading of the relevant statute is one which does not permit a debtor to deduct a "phantom expense" from income.

Finally, this Court does not share the view that a rigid application of Section 707(b)(2)(A)(ii) is required because the 2005 BAPCPA amendments were intended to blindly reduce judicial discretion. This Court does not believe that it is required to reach a decision that is absurd on its face merely to satisfy an unsupported argument that eliminating or reducing judicial discretion is more important than reaching a sound conclusion consistent with reason.

*Compare Hildebrand, III v. Kimbro (In re Kimbro)*, 389 B.R. 518, 527-30 (B.A.P. 6th Cir. 2008) (finding that in 2005 Congress determined that eliminating judicial discretion was more important than accuracy), *with Marrama v. Citizens Bank*, 549 U.S. 365 (2007) (recognizing bankruptcy judges' "broad authority . . . to take necessary or appropriate action 'to prevent an abuse of process' . . .").

*Conclusion*

For the foregoing reasons, the Debtor in this case will not be permitted to deduct a $489 ownership or lease expense for each of two vehicles for which she does not have a monthly loan or lease payment obligation.  As such, the Chapter 13 Trustee's objection to plan confirmation based on the Debtor's expense deductions for the two vehicles which she owns free and clear of monthly loan or lease payments is upheld.  The Court will issue an order consistent with this Decision forthwith.

Dated: Central Islip, New York
      January 21, 2010               */s/ **Robert E. Grossman***
                                         Robert E. Grossman
                                         United States Bankruptcy Judge